## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AXCESS INTERNATIONAL, INC.

      Plaintiff,

     v.

GENETEC (USA) INC.,

      Defendant.

**C.A. No. 18-1276-RGA**

## REPLY BRIEF IN SUPPORT OF GENETEC (USA) INC.'S
## FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)
## <u>MOTION TO DISMISS FOR UNPATENTABLE SUBJECT MATTER</u>

Of counsel:
Grant Kinsel (pro hac vice)
PERKINS COIE, LLP
1201 3rd Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-3516
gkinsel@perkinscoie.com

Arthur G. Connolly, III (#2667)
CONNOLLY GALLAGHER LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
*Attorneys for Genetec (USA) Inc.*

Dated: March 15, 2019

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 1

    1.    Claim construction cannot save the ′158 patent and Axcess does not meaningfully try. ................................................... 2

    2.    Providing authorized access is an abstract idea—Axcess is not entitled to own all ways of providing authorized access. ...................................................................... 4

    3.    There is no underlying factual dispute ............................................. 8

CONCLUSION ....................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
882 F.3d 1121 (Fed. Cir. 2018) ............................................................... 9

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
No. 2:15-cv-478, 2016 WL 3670804 (E.D. Va. July 5, 2016) ............................ 4, 5

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
827 F.3d 1341 (Fed. Cir. 2016) ............................................................... 8

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) ............................................................... 9

*British Telecomm., plc v. IAC/InterActiveCorp.,*
Civil Action No. 18-366-WCB, 2019 WL 438335 (D. Del. Feb. 4,
2019) ...................................................................................... passim

*Burnett v. Panasonic Corp.,*
741 F. App'x 777 (Fed. Cir.), cert. denied, 139 S. Ct. 600, 202 L.
Ed. 2d 429 (2018) ........................................................................... 3

*Chamberlain Grp., Inc. v. Linear LLC,*
114 F. Supp. 3d 614 (N.D.Ill. 2015) ......................................................... 7

*ChargePoint, Inc. v. SemaConnect Inc.,*
Civil Action No. MJG-17-3717, 2018 WL 1471685 (D. Md. Mar.
23, 2018) ................................................................................... 7

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
859 F.3d 1352 (Fed. Cir. 2017) ............................................................ 3, 9

*CyberFone Systems, LLC v. CNN Interactive Group, Inc.,*
558 F.App'x 988 (Fed. Cir. 2014) ........................................................... 4

*In re TLI Commc'ns LLC Patent Litig.,*
823 F.3d 607 (Fed. Cir. 2016) ............................................................. 10

**STATUTES**

35 U.S.C. § 101 ......................................................................... passim

## INTRODUCTION

Axcess concedes in its Response that the claims require nothing more than generic equipment doing what that generic equipment always does. Axcess confirms that Claim 14 (and its dependents)—which are the only claims Axcess specifically addresses—merely requires "an RFID reader, a video camera, an access door, and a method of controlling access through the access door."[1] Axcess further concedes that it did nothing to improve the underlying functionality of any of these generic components, as throughout its Response Axcess reiterates that the claim elements are "conventional."[2] These two concessions are all that it is necessary for the Court to find that the supposed invention disclosed in the '158 patent is abstract and invalid under 35 U.S.C. § 101.

Having conceded the important ground, Axcess makes two arguments in its reply, neither of which survive serious review. First, Axcess plays for time, arguing that the Court should delay ruling on Genetec's Motion so that the parties can spend the next six months or so engaging in claim construction. According to Axcess, construction of Claim 14 as a series of steps and of the phrase "recording a video image" makes the claims less abstract. Axcess never says why this is so. But the Court may assume Axcess's proposed construction—even though it is plainly wrong—and the claim remains exactly as abstract as before. Whether construed as Axcess urges or not, Claim 14 remains a claim to a result with no technological innovation for achieving the result.

Second, Axcess claims that despite the conventional nature of the individual components, the components are incorporated in an unconventional way. Axcess points to the conclusory declaration of the named inventor, Alan R. Griebenow, as evidence of the unconventional nature of the supposed invention. But even fully

---

[1] D.I. 17 at 16.

[2] *Id*. at 16-19.

crediting Mr. Griebenow's declaration does not save the claims. "Unconventional" claims are not necessarily *inventive*, and Mr. Griebenow never says why combining conventional equipment would be *inventive*. He merely claims to be the first to combine conventional equipment. This is not enough to survive a section 101 analysis, as Federal Circuit Judge Bryson, sitting by designation in this District, observed in *British Telecomm., plc v. IAC/InterActiveCorp.*, simply because an invention is supposedly "nonconventional," "does not mean that the claims necessarily incorporate an 'inventive concept.'"[3] There is nothing inventive about the claims of the '158 patent. Genetec's Motion should be granted.

**1.    Claim construction cannot save the '158 patent and Axcess does not meaningfully try.**

Axcess argues that Genetec's Motion should be denied as premature because "claim construction is required."[4] According to Axcess, the Court should deny Genetec's motion and put off the inevitable because, according to Axcess, construing "recording a video image" as "obtaining a video image and storing a video image with the RFID action to provide video verification" makes the claim less abstract.[5] Axcess is wrong.

Axcess only argues that claim construction is necessary for asserted Claim 14 and its dependents, saying nothing whatsoever as to the remaining claims of the '158 patent. In fact, Axcess offers no defense of any kind to the remaining claims in the '158 patent, all of which were challenged in Genetec's Motion to Dismiss, and all of which should now be found to be invalid. But even as to the one claim term that Axcess asserts needs construction, Axcess's claim-construction argument misses the point. Where a proposed construction would not change the Section 101 analysis, the

---

[3] C. A. No. 18-366-WCB, 2019 WL 438335, *20 (D. Del. Feb. 4, 2019)

[4] D.I. 17 at 7.

[5] *Id*. at 7-8.

Court need not delay the ruling on a motion to dismiss.[6] As the Federal Circuit put it in *Cleveland Clinic Foundation v. True Health Diagnostics LLC*, because plaintiff "proposed no construction of any term . . . that would change the § 101 analysis … [,] it was appropriate for the district court to determine that the [] patents were ineligible under § 101 at the motion to dismiss stage."[7]

Axcess offers two claim-construction related proposals: (1) that Claim 14 may "implicitly or explicitly require an order of steps"; and (2) that "recording a video image" should be construed as "obtaining a video image and storing a video image with the RFID action to provide video verification."[8] Neither proposal changes the Section 101 analysis, and not even Axcess contends otherwise. Axcess never explains how or why its proposed claim construction makes the claims either less abstract or more inventive. Why would the order of the steps in Claim 14 make any difference? Axcess never says. Similarly, Axcess merely contends that with its proposed construction "the claimed invention must be found patent eligible."[9] But why? Nothing in the specification describes any particular technological hurdle the named inventor overcame to "stor[e] a video image with the RFID action."[10] Nothing in the specification explains any technological improvement that the named inventor was responsible for that makes storing this information together possible. And nothing in the specification explains *how* the video and RFID are to be stored together, and the claim, even when so construed, does not recite any technology associated with storing this data together. Instead, the specification and the claim read like a wish list—it

---

[6] *See e.g.*, *Burnett v. Panasonic Corp.*, 741 F. App'x 777 (Fed. Cir.), cert. denied, 139 S. Ct. 600, 202 L. Ed. 2d 429 (2018) (affirming a Section 101 ruling at the motion to dismiss stage).

[7] 859 F.3d 1352, 1360 (Fed. Cir. 2017).

[8] D.I. 17 at 7-8.

[9] *Id*. at 8.

[10] *Id*.

would be great to store RFID and video together!—but *how* this is accomplished and what *specific* innovation the named inventor was responsible for to make this possible is neither described in the specification nor recited in the claims. To put it slightly differently, even with Axcess's proposed construction, the claim remains utterly functional, reciting results—"obtaining a video image and storing a video image with the RFID action to provide video verification"—without reciting any technology for achieving these results. This is the architype abstract claim with or without Axcess's—incorrect—construction.

Axcess had the burden to articulate why its construction saves Claim 14, and Axcess did not even try to carry this burden. As the Federal Circuit put it in *Cyber-Fone Systems, LLC v. CNN Interactive Group, Inc.*: "CyberFone argues that claim construction must precede the § 101 analysis, but does not explain which terms require construction or how the analysis would change . . . . There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."[11] Axcess's failure to identify how its claim-construction proposals could possibly save Claim 14 is terminal.[12]

**2.    Providing authorized access is an abstract idea—Axcess is not entitled to own all ways of providing authorized access.**

Axcess contends that "the invention is directed to an integrated monitoring service that includes stored video and RFID data and provides a subscriber with access to this stored data."[13] But even accepting Axcess's statement of the nature of the supposed invention does not help Axcess; it instead highlights why Axcess's patent is fatally abstract. Axcess concedes that the '158 patent does not represent the inven-

---

[11] 558 F.App'x 988, 991 n.1 (Fed. Cir. 2014).

[12] *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-cv-478, 2016 WL 3670804, at *6 (E.D. Va. July 5, 2016) (granting dismissal, and describing conclusory argument that claim construction was necessary before deciding § 101 motion as "empty").

[13] D.I. 17 at 9.

tion or even improvement of the underling systems used to "store video and RFID data."[14] These are conventional storage systems using conventional video and RFID systems. Similarly, Axcess concedes that the '158 patent does not represent the invention or even improvement of the systems used to "provide[] a subscriber with access to this stored data."[15] This is the internet. So, what is the technological advance here?

According to Axcess, the "technological advance" is "when properly construed, the claimed 'recording a video image of the wearer' incorporates storing the video with the RFID action."[16] But because nothing in the claims or specification describes any improvement to the underlying generic equipment or any improvement in *how* the data is stored together, what Axcess is really saying is that it owns *all* ways to store this data together, however achieved. Axcess does not claim to have invented any *particular* way to store video and RFID data together, and thus, seeks to claim ownership over *any way* the information is stored together. That is precisely the problem with Axcess's functional claiming—it seeks to lay claim to ownership of any and all ways to achieve the result of storing video and RFID together. That is fundamentally antithetical to our patent laws and to this Court's 101 jurisprudence, and that is the cornerstone of why Axcess's claim fails. As Circuit Judge Bryson put it in *British Telecomm.*, in finding claims abstract "courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved."[17] The point is that a claim to a result, however achieved—here the result is "obtaining a video image and storing a video image with the RFID action to provide video verification"—is not patentable because it seeks to preclude all ways of achieving the claimed result. As the Supreme Court wrote a cen-

---

[14] *Id*. at 17.

[15] *Id*. at 9.

[16] *Id.* at 10.

[17]*BT*, 2019 WL 438335, at *7.

–5–

tury ago in striking Professor Morse's telegraph patent that claimed "the exclusive right to every improvement where the motive power is the electric or galvanic current, and the result is the marking or printing of intelligible characters, signs, or letters at a distance":

> If this claim can be maintained, it matters not by what process or machinery the result is accomplished. For aught that we now know some future inventor, in the onward march of science, may discover a mode of writing or printing at a distance by means of the electric or galvanic current, without using any part of the process or combination set forth in the plaintiff's specification. …
>
> Nor is this all, while he shuts the door against inventions of other persons, the patentee would be able to avail himself of new discoveries in the properties and powers of electro-magnetism which scientific men might bring to light. For he says he does not confine his claim to the machinery or parts of machinery, which he specifies; but claims for himself a monopoly in its use, however developed, for the purpose of printing at a distance. … The court is of opinion that the claim is too broad, and not warranted by law."[18]

Axcess seeks a similar monopoly—any and all ways of storing RFID and video data together, however accomplished.

Axcess cites to Figure 4 of the '158 patent and various passages in the specification, but this only proves Genetec's point.[19] Figure 4 and the discussion around it describe using generic RFID and video systems and describe no innovation associated with either the underlying systems themselves or in combining the systems. For instance, at step 200 in Figure 4, we are told to "elicit a radio response from RFID tag at access door of secure area."[20] Axcess identifies no improvement or invention associated with eliciting this response. The hard work of figuring out how to do this is

---

[18] *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 113 (1854).

[19] D.I. 17 at 10.

[20] '158 patent at Fig. 4.

left for future innovators. The next step is to "obtain video image of wearer of RFID tag."[21] Again, Axcess identifies no improvement to the equipment used for doing this; it is merely that it should be done. The next step is to ask and answer the question "access authorized?,"[22] and Axcess offers nothing suggesting any improvement in the algorithms or systems that would make any such decision. Next, we "open access door,"[23] but what is Axcess's contribution to the technology that makes this possible? Nothing. "Store video image with RFID Action"[24] is the next step—and according to Axcess this is the supposed innovation. Yet, the specification describes *nothing* that Axcess contributed to performing this step, no improvement in storage techniques, no improvement in image compression, no improvement in representing complex data, no improvement in the underlying physical device. Nothing.

Axcess's relies extensively on *Chamberlain Grp., Inc. v. Linear LLC*[25] but this reliance is misplaced. First, Axcess claims that *Chamberlain* "mandates"[26] the result here, but of course, *Chamberlain* does no such thing as it is from a different district court. Further, *Chamberlain* has been recognized by sister courts as wrongly decided. As the District Court in Maryland put it, *Chamberlain* "contravenes the purpose of the § 101 eligibility standard and well-established Federal Circuit and Supreme Court case law."[27] But more to the point, the patent at issue in *Chamberlain* is not analogous to the '158 patent. The patent at issue in *Chamberlain* claimed both a method and the specific physical apparatus with which the method was applied. Here, the '158 patent

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] 114 F. Supp. 3d 614 (N.D.Ill. 2015).

[26] D.I. 17 at 19.

[27] *ChargePoint, Inc. v. SemaConnect Inc.*, Civil Action No. MJG-17-3717, 2018 WL 1471685 (D. Md. Mar. 23, 2018).

does not claim a specific physical apparatus, but instead merely claims a method of using generic equipment to provide authorized access.

Axcess also cites *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC* as an example of a case where a patent with generic computer and internet components was found subject-matter eligible because the combination of components improved a system by making it "more dynamic and efficient."[28] While the patent in *Bascom* may have claimed a combination of components that was inventive, that is not the case for the '158 patent. Unlike the patent in *Bascom*, the '158 patent does not claim inventive programming or an inventive algorithm that improves the underlying generic systems. Instead, the '158 patent uses generic RFID and video recording equipment to provide access to a secure area in exactly the same way that such equipment has always been used to do this. The dependent claims do not add anything or change the analysis, as they are a continuation of the generic and functional limitations of the independent claims. Nothing in any of the '158 patent claims is inventive.

**3.      There is no underlying factual dispute.**

Axcess's final gambit is to attempt to manufacture a factual dispute in hopes that a factual dispute will prevent dismissal under Rule 12(b)(6). Axcess's gambit fails.

Axcess points to a declaration of Mr. Greibenow to allege there are supposed factual disputes related to the "unconventional" nature of the claims.[29] But Mr. Greibenow's declaration, which merely contains a few paragraphs of general and conclusory statements about the supposedly "unconventional" nature of the claims, does not save the patent. Recently, Circuit Judge Bryson in *British Telecomm.*, ad-

---

[28] 827 F.3d 1341, 1351 (Fed. Cir. 2016).

[29] D.I. 17 at 14-15 (citing D.I. 1-3).

dressed virtually the same argument that Axcess makes here.[30] Just like in this case, in *British Telecomm.*, the plaintiff claimed that its factual allegations that the supposed invention was "novel and nonconventional" precluded dismissal under Rule 12(b)(6).[31] Circuit Judge Bryson disagreed, finding that neither *Aatrix Software, Inc. v. Green Shades Software, Inc.*[32] (on which Axcess relies) nor *Berkheimer v. HP Inc.*[33] " … stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and nonconventional."[34] Judge Bryson found that simply because an invention was "nonconventional," "does not mean that the claims necessarily incorporate an 'inventive concept.'"[35] Moreover, to avoid dismissal under *Aatrix* and *Berkheimer*, requires facts rooted in the specification, as well as "detailed factual allegations raising issues of fact…."[36] As Judge Bryson further noted, "courts have frequently decided section 101 issues on motions to dismiss, and the Federal Circuit has approved of that procedure on numerous occasions, including in cases post-dating the decisions in *Aatrix* and *Berkheimer*."[37]

Mr. Greibenow's declaration does not save Axcess. The declaration contains a handful of paragraphs none of which contain "detailed factual" allegations that iden-

---

[30] *BT,* 2019 WL 438335, at *20.

[31] *Id*.

[32] 882 F.3d 1121 (Fed. Cir. 2018).

[33] 881 F.3d 1360 (Fed. Cir. 2018).

[34] *BT,* 2019 WL 438335, at *20.

[35] *Id*.

[36] *Id*.

[37] *Id.* (citing *Glasswall Solutions Ltd. v. Clearswift Ltd.*, 2018 WL 6720014 (Fed. Cir. Dec. 20, 2018); *SAP Am., Inc. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018); *Burnett v. Panasonic Corp.*, 741 F. App'x 777 (Fed. Cir. 2018); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018); *Maxon, LLC v. Funai Corp.*, 726 F. App'x 797 (Fed. Cir. 2018); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)).

tify any inventive concept. Instead, the declaration describes that it was supposedly "unconventional" to combine RFID and video systems.[38] But as Judge Bryson noted in *British Telecomm.* that is neither here nor there for purposes of the abstract-idea analysis.[39] More to the point, even if combining RFID systems and video systems was "unconventional" as Mr. Griebenow's declaration contends, the '158 patent would still be unpatentable. This is so because neither the specification nor Mr. Griebenow's declaration identify even a single improvement to generic RFID and video systems that is captured by the claims. Simply put, the '158 patent claims the combination of RFID and video systems, but never describes or claims *how* to combine them or *how* to improve them. In the Federal Circuit's words, claims are abstract when "they are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two."[40] Axcess's argument that combining RFID and video systems was "unconventional" at the time of filing—if it establishes anything at all—establishes that the claims of the '158 patent are directed to an abstract idea.

## CONCLUSION

The '158 patent claims an abstract idea performed by generic equipment. Therefore, the '158 patent is not subject matter eligible under 35 U.S.C. § 101, and Genetec's Motion to Dismiss should be granted.

---

[38] *See* D.I. 1-3.

[39] *See BT*, 2019 WL 438335, at *20.

[40] *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).

Dated: March 15, 2019                    Respectfully submitted,

*Of Counsel:*                            /s/ *Arthur G. Connolly, III*
Grant Kinsel                             Arthur G. Connolly, III (#2667)
PERKINS COIE LLP                         CONNOLLY GALLAGHER LLP
1201 Third Ave., Suite 4900              1201 North Market Street, 20th Floor
Seattle, WA 98101                        Wilmington, DE 19801
(206) 359-3516                           (302) 757-7300
gkinsel@perkinscoie.com                  aconnolly@connollygallagher.com
                                         *Attorneys for Genetec (USA) Inc.*